THE COUNTY PARK COMMISSION OF CAMDEN COUNTY, PLAINTIFF, v, HELEN L. KIMBLE, GERALDINE WIDMAYER, WALTER J. WIDMAYER, AND ANTHONY MALATESTA, LENA MALATESTA, RAYOND H. PETERS, CARRIE S. PETERS, HELEN MYCHOL, MICHAEL MYCHOL, WILLIAM J. HORODYSKI, GEORGE J. CULP, LAURA M. CULP, NICHOLAS HARACH, CECILIA A. HARACH, GEORGE S. CHAPMAN, ANN J. CHAPMAN, CHARLES A. MOHRFELD, ADELE P. MOHRFELD, PIO S. MAROZZI, ELVIRA MAROZZI, AND GIOVINO DiPAOLO, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided December 9, 1952.

*Mr. Henry M. Evans,* attorney for plaintiff.

*Mr. Albert E. Heal, Jr.,* attorney for defendants, except defendants Helen L. Kimble, Walter J. Widmayer and Geraldine K. Widmayer.

HANEMAN, J. S. C. Plaintiff herein seeks a construction of the terms of a covenant contained in a certain deed from Stanley C. Kimble and his wife to the plaintiff, the County Park Commission of Camden County. The purpose of this action is to elicit from this court a determination as to whether the plaintiff would effect a forfeiture under a rever-

sionary clause in said deed if it granted permission to property owners, whose lands abut the tract conveyed in said deed, to construct private driveways connecting with a park drive.

In connection herewith I find the following facts:

The County Park Commission of Camden County was created in 1926 pursuant to *chapter* 331 of the *Laws of* 1926 (now *R. S.* 40:37–195 *et seq.*). Under this act it was authorized, *inter alia*, to acquire lands by purchase, gift or condemnation, for the purpose of establishing public parks and open spaces within said county.

By deed dated January 10, 1929 it acquired from Stanley C. Kimble and Helen L. Kimble certain real estate in the Township of Delaware. Said deed contained the following language:

"A further consideration for the conveyance of the lands hereinabove particularly described is that the party of the second part will dedicate the same to the public for park and open spaces for public resort and recreation.

The sole purpose of this conveyance is the dedication of the said land to the public purposes aforesaid, it being understood and agreed that if, at any time in the future, the said dedication should fail and the said lands, or any part thereof cease to be used for the public purposes aforesaid, or any of them, the said land shall thereupon revert to the said parties of the first part, their heirs and assigns.

And further that said conveyance is made upon the express understanding that the land of the party of the first part immediately facing or abutting the land hereinabove conveyed shall be free from any assessments for benefits arising from the establishment and maintenance of any public park, highway or other public improvement in connection with the Camden County Park Commission System of Parks within the land hereinabove described."

Prior to the acquisition of the lands by plaintiff from the Kimbles, the former had prepared, consistent with the statute, a plot which delineated a "proposed boulevard" running along the northerly border of said lands, 60 feet in width. Said boulevard, now known as "Park Boulevard," was eventually laid out. The paved surface was 25.8 feet in width. The northerly line of this paved roadway was

15.3 feet south of the northerly line of the land acquired. This intervening strip consisted, in order commencing with the paved roadway, of an unimproved strip 3.3 feet wide, a sidewalk 6 feet wide, and an unimproved strip 6 feet wide. Both the 15.3 foot strip and the paved road surface are, however, within the confines of the boulevard.

The said Kimbles retained title to some 16.63 acres abutting to the north of the land so conveyed.

In August 1935, subsequent to the death of Stanley C. Kimble, there was prepared for his said "estate" a prospectus in connection with an advertisement for the sale of the said remaining lands. The brochure contained a map and photographs showing the *locus in quo* and delineated Park Drive as abutting the said lands. It contained the following statement in describing the realty and its location:

"between Marlton Pike and *Park Drive*, with two large drellings *facing James G. Pennypaker Park"* * * * *"paved on three sides —area, 16.63 acres"* Location— * * * *"facing Park Drive"* Improvements—*"Concrete and asphalt streets not assessed against property* * * *."*

At the top of prospectus it reads:

*"FOR SALE EXCEPTIONALLY DESIRABLE RURAL PARKWAY TRACT SUBJECT TO PROFITABLE DEVELOPMENT."*

On December 7, 1936, and subsequent to the death of Stanley C. Kimble, intestate, Helen L. Kimble, as his widow and as guardian for her infant daughter Geraldine, defendants herein, conveyed the remaining portion of the said realty to Oak Grove Company. The said Helen L. Kimble, widow as aforesaid, was an officer of Oak Grove Company, *i. e.*, president.

Thereafter, said remaining lands were conveyed by said corporation to Anthony Malatesta and Ferdinando A. Malatesta. The said Anthony Malatesta, who subsequently became the owner of the entire tract, conveyed a portion of

said lands fronting the northerly boundary of the land conveyed to plaintiff, and Park Boulevard, to eight individuals, who have or are about to construct substantial residences on their respective tracts. These individuals have made application to plaintiff for leave to connect their respective properties with the paved portion of Park Boulevard by means of driveways. This would necessitate traversing the said 15.3-foot-wide strip of said boulevard.

The question for determination is whether the granting of permission to the abutting owners to construct such private driveways over this strip 15.3 feet in width would work a forfeiture under the reversionary clause in the Kimble deed.

Implicit in the conveyance to plaintiff for the purposes stated, *i. e.*, "for park and open spaces for public resort and recreation," is the provision that they shall be used for those purposes in the manner permitted by the statute creating said Park Commission.

The provision of the covenant that the conveyed land shall be used for "park and open spaces for public resort and recreation" must be read to mean "use in such manner as the grantee (plaintiff) was authorized by statute to direct." Were the covenant to be read as defendants seem to contend, without regard to plaintiff's statutory powers, the mere construction of the boulevard itself would work a forfeiture. This they have not contended.

One of the powers of the Park Commission is to lay out roadways and boulevards, *R. S.* 40:37-208 and 209, and for that purpose to condemn real estate, *R. S.* 40:37-211. The Commission may as well establish grades, "grade, curb, flag, pave and otherwise improve such parkways, roadways, and boulevards, and regulate the use thereof," *R. S.* 40:37-210. Upon the improvement of a highway, an assessment may be made against an abutting owner for the "special benefits which the laying out of the street or the improvement thereof will confer upon any owner of property benefited thereby," *R. S.* 40:37-211 *et seq.*

That the grantors Kimble knew of such a statutory provision must be presumed from the provision against any such assessment in their deed.

The foundation for such an assessment for special benefits was very aptly stated in *In re Public Service Electric and Gas Co.*, 18 *N. J. Super.* 357 (*App. Div.* 1952), in the following language:

"The foundation of the power to lay a special assessment or a special tax for a local improvement of any character, whether it be opening, improving or paving a street or sidewalk or constructing a sewer, or cleaning or sprinkling a street, is the benefit which the object of the assessment or tax confers on the owner of the abutting property, or the owners of property in the assessment or special taxation district, which is different from the general benefit which the owners enjoy in common with the other inhabitants or citizens of the municipal corporation. Accordingly, it is now well settled in most jurisdictions that adjacent property may be specially assessed to defray, in whole or in part, the cost of local improvements by which such property is especially benefited. That doctrine, as stated, is based for its final reason on enhancement of values. That is to say, the whole theory of local taxation or assessments is that the improvements for which they are levied afford a remuneration in the way of benefits. Whether the property has been specially benefited by an improvement is generally regarded a question of fact, depending on the circumstances in each case, for the determination of the proper tribunal. The broad question is whether the general value of the property has been enhanced, not whether its present owner receives advantage. *McQuillin, supra.*"

How, under any possibly conceivable circumstance, could the value of a parcel of realty bordering a public park be enhanced by the construction of a highway along its property line unless access were permitted to that highway? If no such access were permitted it would seem to follow that such a construction would be a detriment rather than a benefit. Although not so expressly provided in the statute, the reasonable implication is that the plaintiff has authority to permit such access.

It is noteworthy that no such provision for an assessment for benefits against an abutting owner is made where lands are taken solely for open spaces, or what might be strictly

called park purposes. It is of equal significance that the defendant Helen L. Kimble and the representatives of the estate of her late husband recognized and asserted the right which they then conceived they had, to connect their remaining lands with the highway, *i. e.*, Park Boulevard. This is evidenced by the very words of the representations in the advertisement for sale, by means of which they were attempting to obtain a purchaser for the remainder of these said lands.

*R. S.* 40:37–201 provides as follows:

"make, alter, amend and repeal rules and regulations for the protection, regulation and control of the parks and parkways, and the roads, driveways, sidewalks, paths * * *."

*R. S.* 40:37–240 provides as follows:

"may make rules and regulations for the government and use of the parks, open spaces, boulevards, parkways and roadways * * *."

It must follow, both from the statutory permission for the construction of highways and for the assessment for special benefits upon the completion thereof, and for regulation of the parkways, roads, etc., that the Commission has the power, in effect, to declare the road a public highway, subject to such regulations.

Normally, "the right of access to and from a public highway is one of the incidents of the ownership or occupancy of land abutting thereon and it exists whether the fee title to the way is in the public as well as when it is in private ownership subject to the public easement." *Lindel Realty Co. v. Miller*, 2 *N. J. Super.* 204 *(Ch. Div.* 1948), affirmed 4 *N. J. Super.* 37 *(App. Div.* 1949).

It is therefore here held that the plaintiff has the power to grant the several abutting owners the right to construct driveways over the land here in question for access to Park Boulevard, and to impose such requirements or restrictions in connection therewith as it may see fit.

228

The plaintiff having the power to grant permission to the abutting owners for access to the highway, such action will not work a forfeiture under said covenant.

█ In any event, the conduct of the defendants in representing that their grantees could have access to said boulevard serves to estop them from taking advantage of the reversionary clause, even if such action were a violation of the restrictive covenant.

Judgment will be entered accordingly.