STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. INTERPACE CORPORATION, A CORPORATION OF DELAWARE, ETC., DEFENDANT-APPELLANT AND CROSS-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 30, 1974—Decided May 31, 1974.

324

Before Judges HALPERN, MATTHEWS and BISCHOFF.

*Mr. Clifford W. Starrett* argued the cause for appellant (*Messrs. Schenck, Price, Smith & King*, attorneys; *Mr. Willard Bergman, Jr.*, on the brief).

*Mr. Richard L. Rudin*, Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland*, Attorney General of New Jersey, attorney; *Mr. Stephen Skillman*, First Assistant Attorney General, of counsel).

PER CURIAM. The complaint in this partial taking condemnation suit was filed on June 5, 1969. The declaration of taking was filed on March 12, 1971, and a deposit of $103,650 was then made by the State. The commissioners' award was appealed and a jury returned a verdict in favor of defendant for $130,000, that amount representing the value of the property taken and the damage to the remainder. A motion for new trial or *additur* was denied. Interest was allowed by the trial judge on $130,000 from the filing of the

complaint to March 12, 1971 at 6%, and interest at 6% on $26,350 (being the difference between the amount of deposit and the ultimate award) was awarded from March 12, 1971 to April 18, 1973.

Defendant appeals from the judgment entered on the jury's verdict and from the denial of its new trial motion. The State cross-appeals from the allowance of interest as aforesaid.

Defendant's property consisted of approximately 184 acres of land. The premises were zoned for research office and laboratory use for the initial 1000 feet of depth from Cherry Hill Road, and the interior from said road was placed in a specialized economic development zone.

The experts approached the problem of valuation on different theories, leading to a divergence of their views on valuations. Defendant's experts assigned higher values for the lands which ran to a depth of 1000 feet off the highway as against the lands in the rear. They were of the opinion that the front lands were worth between $32,000 and $35,000 an acre, and the rear lands $22,000 to $18,500 an acre. The State's experts treated the 184-acre tract as a single piece of property and took no cognizance of the fact it was located in two different zones.

Defendant challenged some of the comparable sales used by the State as being too distant from the condemned premises, and insisted upon using sales of land made by itself just prior to the commencement of this suit. The State's experts challenged these sales on the theory that the land sold was the best land of the entire tract, whereas the approximately seven acres of land being taken on this condemnation was the poorest. Resolution of the conflict was properly left to the jury.

Defendant offered Clifford Johnson, a consulting engineer, as an expert who would have testified that the taking deprived the remaining acreage of reasonable access. Three factors influenced his opinion: (1) the construction of a third traffic lane to service the Route 80 entrance ramp, (2)

the projected traffic flow as of 1990, and (3) the projected number of employees within the complex in ten years. The trial court rejected the proffer. Relying on *Mueller v. N. J. Highway Authority*, 59 *N. J. Super.* 583, 595 (App. Div. 1960), Interpace contends that the issue of reasonable access was a question of fact which should have been submitted to the jury.

In the case of a partial taking, the owner is entitled not only to the value of the land taken but also to the amount of any diminution in the value of the remainder attributable to the taking. *Ridgewood v. Sreel Investment Corp.*, 28 *N. J.* 121, 125 (1958). The denial of access is compensable, but a property owner is not entitled to access to his land at every point along its frontage. The property owner is entitled to free and convenient or reasonable access to the property and its improvements. *Mueller v. N. J. Highway Authority*, above ; *State Highway Comm'r. v. Kendall*, 107 *N. J. Super.* 248, 252 (App. Div. 1969) ; 2A *Nichols on Eminent Domain*, § 6.4442. However, even though traffic regulations may affect ingress and egress, the resulting inconvenience is not compensable. *State Highway Comm'r v. Kendall*, above ; *State v. Monmouth Hills, Inc.*, 110 *N. J. Super.* 449, 452 (App. Div. 1970), certif. den. 57 *N. J.* 133 (1970) ; *Tubular Service Corp. v. Comm'r, State Highway Dep't*, 77 *N. J. Super.* 556 (App. Div. 1963), aff'd 40 *N. J.* 331 (1963) ; 2A *Nichols on Eminent Domain*, § 6.4113 (4) and 4A *Nichols*, § 14.2431. See Annotation, 73 *A. L. R.* 2d 689, 692–698 (1960).

In *Mueller* this court stated, "What constitutes reasonable access is a question of fact." 59 *N. J. Super.* at 595. Interpace argues that *Mueller* requires submission of the access question to the jury. However, in *Mueller* the court was reviewing the grant of a motion for summary judgment. In that case the factual record was so obscure that a decision was virtually impossible and inappropriate. Interpace ignores the distinction between conclusions to be drawn from the facts and the facts themselves. *Mueller* should not be read to preclude a court from making a decision on undisputed

facts or upon a factually complete record, provided only one reasonable legal conclusion is possible. *Tubular Service Corp.,* above, 77 *N. J. Super.* at 561; *State Highway Comm'r v. Kendall,* above. See also, *Kryscnski v. Shenkin,* 53 *N. J. Super.* 590, 597 (App. Div. 1959), certif. den. 29 *N. J.* 465 (1959).

In *State Highway Comm'r v. Kendall* this court affirmed a judgment *n.o.v.* which denied recovery for impairment of access. In *Kendall* the curb cuts on the property in question were concentrated in one portion and curbing and a guardrail were constructed along the remaining highway frontage. As a matter of law, the property owner was not denied access to such an extent to be entitled to compensation.

In the present case the three preexisting access roads remained intact after the taking. Persons using Interpace Road as an exit would be required to cross the lane constructed to feed traffic on to Route 80. Ingress and egress in some instances will be made more difficult but is not denied. *State v. Monmouth Hills, Inc.,* above, 110 *N. J. Super.* at 452.

Interpace argues, however, that traffic and developer projections indicate that traffic volume would prevent access via Interpace Road. This argument, however, introduces an element of speculation. It is generally agreed that a landowner is entitled to receive a price which reflects the commercial value at the time of taking or that which is a reasonable probability in the near future. *Manda v. Orange,* 82 *N. J. L.* 686, 689 (E. & A. 1912); see also, *State v. Gorga,* 26 *N. J.* 113, 116 (1958); *cf. Ridgewood v. Sreel Investment* above, 28 *N. J.* at 129–131.

The traffic volume argument principally relied on the completion of the developer's ten-year plan and the Transportation Department's projection as of 1990. Therefore, impairment of access is neither a present reality nor a reasonable certainty in the near future. Although it is certainly possible that traffic volume could render this access road

ineffective, the Interpace theory is dependent on several contingencies, e. g., completion of tract development on schedule, continued growth in area, unaltered corporate relocation trends, continued reliance on the automobile for commutation purposes, which render the present offer of proof too speculative. Accordingly, we will not disturb the trial judge's ruling excluding the testimony.

In order to properly valuate the seven condemned acres Interpace argues that evidence of comparable sales must be restricted to small acreage parcels (7–30 acres). Therefore, the property owner argues, the State's assessment based on large acreage parcels (100–300 acres) was misleading, erroneous and requires a reversal.

■ There are two generally accepted measures of damages: the *per se* value of the taken property and the before-and-after value of the property. Although theoretically both methods should lead to the same result, in practice this is not always the case. 4A *Nichols on Eminent Domain,* §§ 14.23, 14.232(1). The *per se* rule is the value of the land taken plus any diminution in the value of the remaining land attributable to the taking. *Ridgewood v. Sreel Investment Corp.,* above, 28 *N. J.* at 125 (1958); *Sterner v. Nixon,* 116 *N. J. L.* 418 (E. & A. 1936). The alternative rule, the before-and-after rule, measures compensation by the difference between the value before and the value after the taking of the landowner's entire estate. *Port of New York Authority v. Howell,* 59 *N. J. Super.* 343, 348 (Law Div. 1960), aff'd 68 *N. J. Super.* 559 (App. Div. 1961); *State v. Speare,* 86 *N. J. Super.* 565, 572–573 (App. Div. 1965), certif. den. 45 *N. J.* 589 (1965). Although *State v. Azzolina Land Corp.,* 101 *N. J. Super.* 103 (App. Div. 1968), argues persuasively the merits of the *per se* or *Ridgewood* rule in highway frontage condemnation cases, it does not hold that it is the only available measure in such circumstances. On the contrary, the court stated:

It was defendant's position — clearly a correct one — that the measure of damages is either that just stated [before-and-after], or,

alternatively, the value of the piece taken plus the diminution of the value of the remainder as a result of the taking. [at 106]

In *Azzolina* the trial judge's failure to allow evidence of the alternative was reversible error.

■ The parcel in the present case contained 184 acres before condemnation. The State was clearly able to assess the value of the condemned portion by the before-and-after rule which would require resort of large acreage parcels. Similarly, Interpace was also able to rebut the State's valuation by use of the method which would stress the increased value of a small acreage parcel. In this situation the question of the comparables is one of weight, not of admissibility.

Interpace objects to the following portion of the charge in which the trial judge referred to general and special benefits:

That is, the rule is that the proper basis of compensation is the value of the property as it would be at the time of taking, but disregarding either the depreciating threat of, or the inflationary reaction to, the proposed taking.

Interpace contends that the charge eliminated from the jury's consideration the value of the general benefits from the proximity to Route 80. However, in another portion of the charge, the trial judge stated:

At the same time, you are instructed that the State is not entitled to any credit, nor should the award of just compensation to Interpace be reduced by any general benefit which it may receive by reason of the construction of Route 80. * * *

So, to the extent that general benefits are reflected in market value, the owner is entitled to them.

■ ■ General benefits are those produced by the improvement which a property owner may enjoy in the future in common with all other property owners in the area. The question of benefits usually arises when a statutory right to set off for benefits exists. See *Ridgewood v. Sreel Investment Corp.*, above, 28 *N. J.* at 131; 3 *Nichols on Eminent Do-*

*main,* § 8.62. General benefits may not be considered to reduce the compensation. The applicable rule in the ordinary condemnation case is that the proper basis of compensation is the value of the property as it would be at the time of the taking disregarding depreciation or inflation attributable to the proposed improvement. See *Jersey City Redevelopment Agency v. Kugler,* 58 *N. J.* 374, 379 (1971); *Housing Authority, Atlantic City v. Atlantic City Expo.,* 62 *N. J.* 322, 330 (1973).

 The land cannot be considered in isolation. As we read it, the instruction attempted to prevent reductions or credits attributable to an intangible benefit. It did not prevent compensating the property owner at the current market value of similarly situated property. A review of the charge in its entirety satisfies us that the jury was not misled.

Finally, Interpace argues that the verdict was against the weight of the evidence because properties were sold at prices per acre in excess of the average price per acre reflected in the jury's award. Essentially, Interpace's argument is another version of its argument concerning method of valuation.

The State's expert, Steinberg, explained that his method of evaluation — the before-and-after method — required that his appraisal refer to large acreage tracts of comparably situated and zoned land. He testified that only two such comparables existed. Both involved land comparably zoned and situated along or in close proximity to two major state highways — Routes 10 and 202. The first tract of 100 acres sold for $10,000 an acre; the second tract of 338 acres sold for $12,000 an acre. Steinberg did refer to two tracts located in close proximity to the Interpace property; in fact, one tract of 26½ acres was sold by Interpace to a realty company. The 26½-acre tract brought $37,700 an acre; the smaller two-acre tract brought $26,400 an acre. However, Steinberg rejected these sales as comparables because of their small size, which factor Steinberg concluded commanded a higher sales price than similarly situated but larger tracts.

R. 4:49–1(a) provides that a new trial may be granted if, having given due regard to the jury's opportunity to evaluate the credibility of the witnesses, it clearly appears that there was a miscarriage of justice under the law. See *Dolson v. Anastasia,* 55 *N. J.* 2, 6–8 (1969). The award of $130,000 does not mean that the jury disregarded evidence; rather, it indicates that it chose to adopt Steinberg's conclusion that small tracts are not truly comparable. In determining valuation the jury is under no obligation to accept an expert's opinion; it may accept such testimony as appears reasonable, reject all of it or accept all of it. *State, Comm'r of Transportation v. Vacation Lands, Inc.,* 92 *N. J. Super.* 471, 478 (App. Div. 1966). In any case which requires an appraisal of real property, differences of opinion may be expected. An expert's selection of comparable property is not always confined to location. The essential criterion in an expert's decision to use a sale as a comparable is a substantial similarity of conditions. *State v. Probasco,* 114 *N. J. Super.* 546, 551–552 (App. Div. 1970), aff'd 58 *N. J.* 372 (1971). Here, the State's expert concluded the primary characteristic of comparables was large acreage. It was within the power of the jury to accept or reject his thesis. Accordingly, the verdict is not against the weight of the evidence.

In its cross-appeal the State attacks the allowance of interest on the judgment from the date of the filing of the complaint.

The State never questioned the propriety of the allowance of interest commencing from the date of the filing of the complaint. It conceded that fact below both in oral argument and in its brief.

Here, the State argues that the delay in obtaining an award was caused by defendant's appeal and for that reason interest should not be allowed. The exercise of the right to appeal should not deprive a party of rights to which he is otherwise entitled.

Affirmed.