NEW JERSEY TURNPIKE AUTHORITY, PLAINTIFF-APPEL-
LANT, v. HERRONTOWN WOODS, INC., *ET AL.*, DE-
FENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 9, 1976—Decided November 24, 1976.

Before Judges MATTHEWS, SEIDMAN and HORN.

*Mr. Bernard M. Reilly* argued the cause for appellant (*Mr. Herbert I. Olarsch*, attorney).

*Ms. Frances G. Massie* argued the cause for respondents (*Messrs. Jamieson, McCardell, Moore, Peskin & Spicer*, attorneys; *Mr. Thomas C. Jamieson, Jr.* on the brief).

PER CURIAM. The New Jersey Turnpike Authority appeals from an award in this condemnation case made by the Law Division after a trial without a jury. Plaintiff filed its complaint and declaration of taking on September 28, 1971. Commissioners were appointed December 22, 1971. They entered their report on August 21, 1973 and both parties

appealed therefrom, so that a trial *de novo* was held before the trial judge on a stipulation waiving a jury. The judge made a total award of damages in the sum of $133,682, being the aggregate sum of the value of the property taken, $88,974; damages to a strip subject to pipeline easement, $7,404, and damages to the remainder of the tract, $37,304.

Defendant Herrontown Woods, Inc., on the date of the taking, September 28, 1971, was the owner of an irregularly shaped parcel consisting of 35.33 acres in a rural neighborhood fronting on the Turnpike and with access on a narrow dead-end street. The property had some old dilapidated farm buildings thereon which were not affected by the taking. The land was zoned industrial and research. It was located basically at the crossing of I-195 and the Turnpike.

During the 1960s the State undertook the planning and construction of Interstate 195, a major limited-access interstate highway running east-west across New Jersey. It was proposed to cross over and interchange with the New Jersey Turnpike in Washington Township, Mercer County. Acquisition of right-of-way for I-195 by the State Department of Transportation in the Washington Township area took place in the 1968–1970 period.

In the late 1960s the New Jersey Turnpike Authority and the State Department of Transportation commenced joint planning for the construction of the interchange between the Turnpike and I-195. Design engineering for the interchange commenced in 1968, property acquisition took place in 1971 and construction commenced in 1972, with completion of the interchange in the fall of 1974.

Plaintiff sought by the condemnation action to take 14.83 acres in fee and 1.853 acres for utility easement, leaving title to 20.5 acres remaining in the owner. Only two witnesses testified below as to the value of the land which was taken, the value of the easement and the damages to the remainder. John Rapp, real estate expert, testified for the

State, and Bryce Thompson, also a real estate expert and president of defendant company, testified for defendant.[1]

Rapp appraised the value of the subject property prior to the taking at $4,000 an acre. Utilizing this figure for the area taken and giving a 25% damage factor to the remainder, and finding that the new easement was worth $1,000 an acre, he testified that approximately $83,500 would represent just compensation. As a secondary valuation Rapp stated that as a result of the "special benefit" to the subject property due to the creation of the Edgewood Road overpass and the continuation of this previously dead-ended road (providing access to the property that did not exist before) the damages to the remainder should be offset by 50%, or $500 an acre, so that $71,421 would be just compensation.

Thompson appraised the subject property before the taking at $9,240 an acre, or a total value of $326,476. Utilizing this figure for the area taken and applying a 50% damage factor to the remainder, and finding that the easement had depreciated 75%, he concluded that $255,530 represented the value of that which was taken as well as the damages to the remaining land.

Each of the experts based his respective evaluation on comparable sales. Rapp enumerated the details of nine sales, of which three were in industrial zones. Thompson referred to seven sales, six of which were in areas zoned for industrial use. The judge regarded only two sales cited by Rapp and three sales cited by Thompson as significant. *Ocean City. v. Landolfo,* 132 *N. J. Super.* 523, 528 (App. Div. 1975). These significant sales, all of which were of land in industrial zones, were as follows:

---

[1] The circumstances of this case suggest to us that on application of either party or at the instance of the court, acting on its own motion, an independent expert might have been appointed for the purpose of taking his testimony as a disinterested expert witness. *Wayne Tp. v. Kosoff,* 136 *N. J. Super.* 53 (App. Div. 1975), certif. granted 69 *N. J.* 77 (1975).

By Rapp:

#1    40.24 acres sold February 1970 at $7,000 an acre

#2    35.33 acres (subject property) sold July 1966 at $1,500 an acre.

By Thompson:

#1    Same as #1 above, referred to by the parties as the "Hydroponic" sale

#2    22.496 acres sold in October 1972 at $9,826 an acre[2].

#3    35.74 acres sold in September 1973 at $12,000 an acre.

■ Plaintiff first argues that the trial judge erred in admitting into evidence sales which were enhanced in value by the project itself. These consisted of all sales which the judge deemed to be meaningful, except for the 1966 sale, by which defendant acquired title to the subject property. Although plaintiff's expert first introduced the Hydroponic sale as a comparable sale although enhanced, plaintiff now submits that it was done because "its non-admissibility" was not clear. Additionally, it says it was on notice that it would be utilized by defendant's expert and consequently proffered it "not so much as a comparable sale but in order to explain its significance and discount it to the Court due to its enhancement by the Project."

Plaintiff urges that the "factoring out" of enhanced value is virtually impossible; that once the enhancement element is established the process of arriving at a pre-enhancement value is sheer speculation. We disagree.

Real estate expert witnesses are often required to "factor out" elements pertaining to sales of comparable property which represent dissimilarities between the subject lands and comparable lands which have been sold, *State v. Probasco,* 114 *N. J. Super.* 546, 552 (App. Div. 1970), aff'd 58 *N. J.* 372 (1971); so also as to the value of commercial property where the comparable sales were residentially-zoned property, *Rockland Elec. Co. v. Bolo Corp.,* 66 *N. J. Super.*

---

[2]This was an error. The sale actually was of 28 acres, so that the price was $7,866 an acre.

171, 179 (App. Div. 1961), and as to value if rezoned, by way of explaining his opinion of existing market value, *State v. Gorga,* 26 *N. J.* 113 (1958).

Thus, in *State v. Probasco, supra,* 114, the court stated:

> The essential criterion in an expert's decision to use a sale as a comparable is a substantial similarity of conditions. See the discussion in *Moorestown Tp. v. Slack,* 85 *N. J. Super.* 109, 113–114 (App. Div. 1964), certif. den. 43 *N. J.* 452 (1964). But the expert may well discount dissimilarity of one or more conditions, if there is such similarity as to others so that, after adjusting for the dissimilarities, there remains such educational value in the sale price as to help the appraiser in valuing the subject property. *Id.,* at 114. The differences requiring consideration, and, perhaps, adjustment, may include those as to physical aspects, degree of improvement, actual or highest and best use, location, time or date of sale and the degree of deviation from the willing buyer-willing seller concept (*e. g.,* as here, pressure on the buyer to buy or on the seller to sell). *Id.,* at 115. [114 *N. J. Super.* at 552]

See also, *State, by Com'r of Conservation v. Vacation Land, Inc.,* 92 *N. J. Super.* 471, 479 (App. Div. 1966), and *South Orange v. Alden Corporation,* 71 *N. J.* 362 (1976).

Plaintiff's argument on this point is more appropriately addressed to the weight of the opinion rather than to its admissibility. *State v. Probasco, supra,* 114 *N. J. Super.* at 553.

We do not agree with plaintiff's interpretation of the holding of the court in *Jersey City Redevelop. Agency v. Kugler,* 58 *N. J.* 374 (1971). There the court said:

> * * * The generally prevailing rule, as indicated by the texts and rulings in other jurisdictions, seems to be that any diminution or enhancement in value thus stimulated cannot be charged against or credited to the owner in the later condemnation proceedings. The rule supported by the weight of authority in the ordinary condemnation case is that the proper basis of compensation is the value of the property as it would be at the time of the taking (or at the time fixed by the statute, such as the date of commencement of the condemnation proceedings) disregarding either the depreciating threat of or the inflationary reaction to the proposed public project. [at 379; citations omitted]

We do not interpret this language to imply that a comparable sale may not be evidential merely because the sales price is inflated due either to the improvement constructed upon the property taken or due to the publication of information as to the proposed improvement.

Although Rapp, expert for the Authority, failed to provide any evidence of enhanced value, Thompson did provide some data and made adjustments downward for time and location near the interchange. The judge in his letter opinion said of the three sales testified to by Thompson and which he thought to be comparable:

> * * * All three of these sales were of properties in the immediate vicinity of the two interchanges and the Court finds as a fact that the value of each of these was enhanced by the proximity of those interchanges and therefore must be subject to limited use to establish the value of the subject property.

We find that there was sufficient evidence in the record to furnish a basis for the trial judge to "factor out" the increase in value due to the enhancement. Although Rapp offered no testimony as to the enhancement factor, Thompson's testimony did furnish sufficient proof as to warrant the judge's making a reasonably intelligent determination with respect to the monetary effect of the enhancement.

Plaintiff also contends that the judge erred in failing to deduct for specific benefits to the subject property. Prior to the taking and construction of I-195 the subject property was located at the end of a narrow dead-end street known as Edgebrook Road. As part of the Turnpike interchange, an overpass bridge was constructed extending Edgebrook Road over the Turnpike to connect with that road on the other side. Plaintiff's expert, Rapp, testified that this overpass specifically benefitted the subject property and its near neighbors, and that this specific benefit offset the damage factor to the remainder by 50%. Defendant's expert, Thompson, admitted on cross-examination that the overpass was a benefit. However, the judge held that the project did not confer a

special benefit on the subject property, but conferred only a general benefit for which the property owner should not be penalized. Accordingly, he refused to make any reduction in the amount of compensation for said benefit.

The general rule, as stated in *State v. Interpace Corp.*, 130 *N. J. Super.* 322, 330 (App. Div. 1974), is that "[g]eneral benefits are those produced by the improvement which a property owner may enjoy in the future in common with all other property owners in the area." In *Sullivan v. North Hudson R.R. Co.*, 51 *N. J. L.* 518 (E. & A. 1889), the court observed that with respect to special benefits the question was

* * * whether there was advantage likely to accrue to this property * * * over and above the advantages to other property in that vicinity. * * * We regard it as settled by the clear weight of authority, that benefits arising from increased facilities of travel, such as the increase in value from increased population and trade which such facilities bring, are general benefits. [at 525]

See also, 3 *Nichols, The Law of Eminent Domain* (3 ed. 1965), § 8.6203(1) at 77.

In the instant case we find no special benefit or special advantage to the subject property over and above that which is conferred upon property owners in the general area. Accordingly, we concur with the trial court's determination on this point.

█ Finally, plaintiff contends that the decision of the trial judge was contrary to the weight of the evidence and is not properly grounded and supported in the evidence. We disagree. We find that the judge's analysis of the evidence and his rationalization based thereon is reasonable and is grounded in the evidence and the reasonable inferences which could be derived therefrom.

When plaintiff requested the trial judge to specify more exactly how he arrived at his decision, the judge stated:

I arrived at it by analyzing the purchase price of the subject property, the purchase price of the Hydroponic property some year and a half before where that sold for $7,000 an acre, I considered the

properties in the immediate vicinity on the Robbinsville-Allentown Road which ranged from $9,800 to $12,000 an acre and I attempted to consider the adjustment incidentally by Mr. Thompson on the $9,800 area was down to $8,300 and the $12,000 to $9,500. I attempted to evaluate those sales in comparison with what the subject property sold for several years before and I arrived at a figure that I consider to be fair and equitable.

At oral argument before us counsel for plaintiff suggested that this court should review the transcript and make its independent findings as to the award. Of course, this implies that there is sufficient basis in the record to warrant our doing so. We cannot understand why there is insufficient basis in the record for the trial judge to make the determination and there is sufficient basis in the record for us to make the determination. In any event, the suggestion is not adopted because it is unwarranted and we find no reason for its adoption. See *State v. Johnson,* 42 *N. J.* 146, 162 (1964); *Dolson v. Anastasia,* 55 *N. J.* 2 (1969).

We have observed, however, that as urged by plaintiff and candidly acknowledged by defendant the trial judge apparently neglected to note in his calculations that Thompson's comparable sale no. 2, consisting of 22.496 acres, was corrected on cross-examination to show that actually 28 acres were sold. See note 2, *supra.* Accordingly, we affirm the judgment in principle. We remand the matter to the trial judge, however, for the purpose of reviewing his findings and making such amendment thereof and of the judgment as may be warranted under the circumstances. Jurisdiction is not retained.

Affirmed and remanded.