40 A.3d 75

BOROUGH OF HARVEY CEDARS, PLAINTIFF–APPELLANT,
v. HARVEY KARAN AND PHYLLIS KARAN, TENANTS
IN COMMON, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 31, 2012—Decided March 26, 2012.

158

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■

Before Judges PAYNE, REISNER and HAYDEN.

*Lawrence H. Shapiro* argued the cause for appellant (*Ansell Grimm & Aaron*, attorneys; *Mr. Shapiro*, on the brief).

*Peter H. Wegener* argued the cause for respondents (*Bathgate, Wegener & Wolf*, attorneys; *Mr. Wegener*, of counsel and on the brief; *Rui O. Santos*, on the brief).

The opinion of the court was delivered by

Reisner, J.A.D.

In this condemnation case, plaintiff Borough of Harvey Cedars appeals from trial court orders dated April 5, 2011, excluding certain evidence following a *N.J.R.E.* 104 hearing; April 11, 2011, entering a $375,000 judgment based on the jury's verdict on valuation; and May 13, 2011, denying plaintiff's motion for a new trial.[1]

The central question on this appeal is whether public construction of an enormous oceanfront beach dune, for which plaintiff condemned an easement on defendants' land, conferred a special benefit on defendants' beach front property in Harvey Cedars.

---

[1] Plaintiff moved in the alternative for remittitur, but has not briefed the remittitur issue on this appeal. That issue is therefore waived. *Sklodowsky v. Lushis*, 417 *N.J.Super.* 648, 657, 11 *A.3d* 420 (App.Div.2011).

The dune is one part of a line of dunes, created by the Army Corps of Engineers (Corps), that will eventually run the length of the ocean side of Long Beach Island (LBI).[2] The formerly-spectacular ocean view from defendants' house is now partially blocked by the twenty-two-foot high dune, which occupies one-third of their land. However, their house is now safer from storm damage because the dune was constructed. Judge E. David Millard concluded that construction of the dune did not confer a special benefit on the property. Instead, he found that the only benefit conferred was the general benefit for which the dune was constructed, i.e., to protect the island and its inhabitants from the destructive impact of hurricanes and nor'easters. We find no legal error in that ruling, which is consistent with established case law.

We also find no error in Judge Millard holding a *N.J.R.E.* 104 hearing prior to the condemnation trial to determine whether plaintiff's proposed expert testimony could prove the existence—as opposed to the value—of a special benefit. Having determined that plaintiff's proofs were inadequate as a matter of law to establish a special benefit to defendants' property, he appropriately precluded plaintiff from presenting that evidence to the jury at the condemnation trial. We likewise find no error in the judge's evidentiary rulings during the trial. Finally, we find no basis to set aside or reduce the verdict as excessive. Consequently, we affirm all of the orders on appeal.

I

On August 27, 2010, the judge then assigned to hear motions on the case determined that the report of plaintiff's real estate expert, Donald Moliver, created a genuine issue of fact as to whether the dune conferred a special benefit on defendants'

---

[2] In a previous opinion, we acknowledged the history of serious storm damage to LBI, and the role of dunes in protecting the island. *McGovern v. Bor. of Harvey Cedars*, 401 *N.J.Super.* 136, 146–47, 949 *A.2d* 302 (App.Div.2008).

property and that the issue should be submitted to the jury in the condemnation trial. The judge suggested that the jury might be asked to answer a special interrogatory concerning the issue of special benefits.

Closer to the time of the trial, defendants moved for a *N.J.R.E.* 104 hearing to address the special benefit issue. Judge Millard, who had not decided the previous motion, determined that the threshold issue of "whether a particular benefit is a special or general benefit" was a legal issue for the court to decide. He reasoned that "it then becomes a fact question for the jury what the financial impact of any special benefits is on the property in question, but there is absolutely a preliminary threshold before this evidence [can] go in front of a jury." On that basis, the judge ruled that he would hold a *N.J.R.E.* 104 hearing to determine whether plaintiff's evidence established a special benefit or a general benefit.

At the hearing, plaintiff presented testimony from Randall A. Wise, a civil engineer specializing in the design and engineering of coastal projects.[3] Wise, who was employed by the Corps, explained that to obtain Congressional funding for a project, such as the LBI dune project, the Corps had to analyze the national and local benefits of the project. One part of that analysis focused on the project's benefit in protecting private property. In that context, he had prepared an analysis of "the storm damage reduction benefits" that the dune construction project would provide "to Harvey Cedars shorefront properties."

---

[3] At this hearing, plaintiff did not present testimony from its real estate expert, Moliver, who had no engineering expertise. Moliver's March 9, 2010 appraisal report had opined, in two conclusory sentences, that the property would "enjoy ... special benefits" due to "added protection against beach erosion, wave attack, and potential property damage." Moliver quantified the value of the alleged special benefits by calculating the cost of building the dune. By contrast, Wise's testimony was designed to establish, based on his engineering expertise, that the dune would in fact confer benefits on defendants' property in the form of increased safety from storms, although he could not quantify the value of that benefit.

His analysis included a projection of the type and frequency of expected storm cycles over a 500 year period. He testified that, according to that theoretical projection, without the dune project defendants' property would likely incur storm damage "at a 37–year return period," but with the dune in place "damage would not be expected up to the 200–year or greater" return period. He testified that "the difference" between those two projections represented "the benefit obtained by that property."

Wise also opined that properties closer to the beach were at greater risk of storm damage and therefore realized greater benefit from the project than properties located farther back from the beach. For example, he projected that without the project, defendants' property had a fifty-six percent chance of being "totally damaged" in the "next 30 years," while properties located along the next street back from the beach had a thirty-seven percent chance of incurring such storm damage. On cross-examination, Wise admitted that the studies about which he was testifying were not part of the Corps' report to Congress to justify the project, but instead he had prepared them specifically for purposes of this litigation.

On cross-examination, Wise also admitted that the LBI project was "an entire island project" that is, it had "been formulated for the island" as opposed to one discrete portion. He admitted that, because once the Corps builds a dune, the dune becomes public property and protects the beach, the project "provides public access and public enjoyment of the beaches." He agreed that the twenty-two-foot height of the dune was aimed at maximizing the economic benefit to the LBI communities as a whole rather than to any particular town on the island.

He also conceded that the dune in front of defendants' property was not built solely to protect their house, but rather to protect the houses further inland as well as houses to the north and south on the beach front. Further, a single dune would provide "little benefit" unless it was part of the whole line of dunes going up the island's coast. Otherwise, flood waters would simply flow around

the dune and cause damage to defendants' property and the island as a whole.

After the hearing, Judge Millard ruled that "as a matter of law" the benefits to defendants' property to which Wise testified, "[do] not constitute special benefits and, as such, may not be presented to the jury." He made clear that he was not "barring evidence of special benefits" but rather was concluding that the incremental additional storm protection that Wise described was part of the general benefit provided by the dune system and did not provide what the law recognizes as a "special benefit" to defendants' property.

Citing *Richardson v. Big Indian Creek Watershed,* 181 *Neb.* 776, 151 *N.W.2d* 283, 286 (1967), the judge reasoned that "general benefits are those which arise from the fulfillment of the public object which justified the taking. Special benefits are those which arise from the peculiar relation of the land in question to the public improvement. Special benefits are ordinarily merely incidental and may result from physical changes in the land."

He also relied on *Sullivan v. North Hudson Railroad Co.,* 51 *N.J.L.* 518, 18 *A.* 689 (E. & A.1889). Citing examples from *Sullivan,* the judge reasoned that if a railroad project, intended to provide transportation and access to commerce for the general area, also happened to result in the draining of a swamp on a defendant's property thereby creating more usable dry land, that would be a special benefit to the defendant's property. Or, if the construction of a railroad embankment across a defendant's land also incidentally provided a retaining wall for defendant's millpond, that would be a special benefit. However, the incremental commercial benefit of proximity to rail transportation would only be a general benefit to the defendant's property. *See Sullivan, supra,* 51 *N.J.L.* at 540, 18 *A.* 689.

After deciding the special benefits issue, the judge decided a second evidence question. In that ruling, the judge adopted the argument of plaintiff's counsel that settlements of condemnation cases with other beachfront property owners would be inadmissi-

ble in the litigated condemnation cases.[4]  He therefore denied an application to introduce evidence of a $150,000 settlement in a case involving another set of beachfront property owners.  The judge recognized that some owners had settled for one dollar and others had settled for much larger sums, but none of those settlements would be admissible.

During the ensuing condemnation trial, both sides' experts agreed that, prior to the taking, defendants' property was worth $1.9 million.  However, the jury heard starkly opposing testimony concerning the dune's impact on defendants' ocean and beach view and the diminution in value attributable to the dune easement. Moliver, plaintiff's real estate expert, insisted that any loss of view was de minimus and was only worth $300 in compensation.  During cross-examination, however, he admitted that he had never actually gone into defendants' house or out on their second-floor deck in order to see the impact of the dune on their view.

Defendant's expert, Robert Gagliano, testified that the loss of view was significant and reduced the value of the property by $500,000.  He also testified that, prior to the construction of the dune, defendants had a strip of private beach on their property, whereas that land was now occupied by a large dune that they could not use for recreation.  That added to the property's loss in value.

Mr. Karan gave detailed testimony concerning the 1973 construction of his family's dream house at the shore, with its glass wall facing the ocean, oceanfront decks, and sweeping views of the beach, shoreline and ocean.  He also eloquently described the way the twenty-two-foot high dune interfered with that view, including blocking the beach and surf view from the second-floor deck, and transforming the water vista from the dining room into a view of a

---

[4] The *Karan* case was one of dozens of condemnation cases against beachfront owners.  At the April 5 hearing, the judge heard argument from the Karans' attorney and the attorney for another couple, the Strines.  The Strines' attorney raised the issue of admitting evidence of the settlements, but it was clear that the judge's ruling would apply to both cases.

"wall of sand." The jury was taken to the property for a site visit, during which they observed the view from defendants' house.

After two days of deliberations, the jury returned a verdict of $375,000. Finding no miscarriage of justice, Judge Millard denied plaintiff's motion for a new trial. His reasons were stated in an oral opinion, supplemented by a written opinion accompanying the May 13, 2011 order.

## II

We begin by considering the issue of special benefits. In the case of a partial taking, the owner "is entitled to be compensated not only for the value of the land taken but also for any diminution in the value of [the] remaining land which may be attributable to the taking." *Ridgewood v. Sreel Investment Corp.*, 28 *N.J.* 121, 125, 145 *A.*2d 306 (1958); *see N.J.S.A.* 20:3–29 (a condemnee is "entitled to compensation for the [condemned] property and damages, if any, to any remaining property"). For example, if the highest and best use of defendants' land is a shopping center, and the municipality takes the land defendant is using for the center's parking lot, the remaining land may suffer a loss in value beyond the per-square-foot cost of the land being condemned. *See Sreel, supra,* 28 *N.J.* at 128, 145 *A.*2d 306; *cf. South Orange v. Alden,* 71 *N.J.* 362, 366–68, 365 *A.*2d 469 (1976) (damage to the remainder may be mitigated where a public entity condemns a private parking lot but replaces it with a public lot).

In certain very limited circumstances, the project for which the condemnation is being undertaken confers a special benefit on the remainder. In those unusual cases, the value of the special benefit may offset the award to which the defendant would otherwise be entitled for damage to the remainder.[5] *See Sullivan,*

---

[5] *Sreel* suggests that absent a statute specifically authorizing offsets for special benefits, such offsets are impermissible in a condemnation case. *Sreel, supra,* 28 *N.J.* at 131, 145 *A.*2d 306; *see State Com'r of Transp. v. Interpace Corp.,* 130 *N.J.Super.* 322, 330–31, 327 *A.*2d 225 (App.Div.1974). However, no party to this

*supra,* 51 *N.J.L.* at 540, 18 *A.* 689. On the other hand, neither side in a condemnation case is entitled to have the jury consider the project's general benefits to the property, either to increase or decrease a compensation award. *Sreel, supra,* 28 *N.J.* at 131, 145 *A.*2d 306.

> General benefits are those produced by the improvement which a property owner may enjoy in the future in common with all other property owners in the area. The question of benefits usually arises when a statutory right to set off for benefits exists. *See Ridgewood v. Sreel Investment Corp.,* above, 28 *N.J.* at 131 [145 *A.*2d 306]; 3 *Nichols on Eminent Domain,* § 8.62. General benefits may not be considered to reduce the compensation. The applicable rule in the ordinary condemnation case is that the proper basis of compensation is the value of the property as it would be at the time of the taking disregarding depreciation or inflation attributable to the proposed improvement.
>
> [*State Com'r of Transp. v. Interpace Corp., supra,* 130 *N.J.Super.* at 330–31, 327 *A.*2d 225.]

█ As Judge Millard noted, a special benefit is a benefit particular to the property that is the subject of the condemnation and not the type of benefit that was the object of the project. The latter are general benefits:

> The general rule, as stated in *State v. Interpace Corp.,* 130 *N.J.Super.* 322, 330 [327 *A.*2d 225] (App.Div.1974), is that "[g]eneral benefits are those produced by the improvement which a property owner may enjoy in the future in common with all other property owners in the area." In *Sullivan v. North Hudson R.R. Co.,* 51 *N.J.L.* 518 [18 *A.* 689] (E. & A.1889), the court observed that with respect to special benefits the question was * * whether there was advantage likely to accrue to this property . . . over and above the advantages to other property in that vicinity. . . . We regard it as settled by the clear weight of authority, that benefits arising from increased facilities of travel, such as the increase in value from increased population and trade which such facilities bring, are general benefits.
>
> [*N.J. Tpke. Auth. v. Herrontown Woods, Inc.,* 145 *N.J.Super.* 279, 286, 367 *A.*2d 893 (App.Div.1976).]

For example, in *Herrontown Woods,* the court held that a highway construction project, which would transform defendant's street from a dead-end into a through street, did not confer a

---

appeal has raised the issue of statutory authority and we do not address it. We also need not address the issue of whether the Legislature has the constitutional authority to authorize offsets for general benefits in condemnation cases such as this one. *See McCoy v. Union Elevated R.R. Co.,* 247 *U.S.* 354, 365–66, 38 *S.Ct.* 504, 507–08, 62 *L.Ed.* 1156, 1165–66 (1918).

special benefit on defendant's property. Instead, it conferred only the kind of general benefit that highway construction would bring to a neighborhood. *Ibid.*

As the Court of Errors and Appeals explained in *Sullivan,* the existence of a special benefit is a matter of kind rather than degree.

> The benefits which may accrue to a landowner, by reason of the construction and operation of a railroad across his land, are usually regarded as consisting of two classes: general benefits, being those which affect the whole community or neighborhood, by increasing the facility of transportation, attracting population, and the like; and special benefits, being those which directly increase the value of the particular tract crossed, as if a cut required by the railroad should drain a swamp, or a necessary embankment should maintain a mill pond, or if a bridge, which the railroad company had to build, should afford a better way between portions of the tract.
>
> Of special benefits, there are none in the present case. No advantage could possibly enure to the property of the plaintiff from the construction and operation of this railroad, which would not in greater or less degree be enjoyed by the entire neighborhood.
>
> [*Sullivan, supra,* 51 *N.J.L.* at 540, 18 *A.* 689.]

*See also* 3–8A *Nicholas On Eminent Domain* § 8A.02 ("[A] special benefit ... must differ in kind, rather than in degree, from the benefits which are shared by the public at large.").

We agree with Judge Millard that the protection afforded to defendants' property by the dune construction is a classic example of a general benefit. While defendant's property may be benefited in somewhat "greater ... degree" than its inland neighbors, because it is closer to the ocean and therefore in somewhat greater danger of incurring storm damage, that is not a legally cognizable "special benefit" for purposes of valuation in a condemnation case. *Sullivan, supra,* 51 *N.J.L.* at 540, 18 *A.* 689; *see Richardson, supra,* 151 *N.W.*2d at 286 (A "flood retardation" project that protected the condemnee's farm from erosion due to run-off did not confer a special benefit, because "[s]lowing the runoff would be common to the area and is the purpose of the project.").

Plaintiff's reliance on *City of Long Branch v. Liu,* 203 *N.J.* 464, 4 *A.*3d 542 (2010), is misplaced, because *Liu* did not address a

partial taking or the issue of special benefits. In *Liu*, the city condemned defendant's entire property. The Court rejected defendant's claim to compensation for additional dry land adjacent to the condemned property. That land, which was "seaward from the mean high water mark," had been created by a government beach replenishment project, and, under the public trust doctrine, belonged to the public rather than to defendant. *Id.* at 486, 4 *A*.3d 542. In the course of its ruling, the Court recognized that the beach replenishment program was intended to protect the shoreline from erosion, thereby conferring benefits on defendants as well as on the public. *Id.* at 483, 4 *A*.3d 542. The opinion is not on point here and does not support plaintiff's argument that the dune project provided a special benefit to defendant's property.

We agree with Judge Millard's conclusion that the dune construction did not confer special benefits on defendants' land. The project did not permit any new or more lucrative use of the property. *Compare United States v. 2,477.79 Acres*, 259 *F*.2d 23, 28–29 (5th Cir.1958)(reservoir construction transformed defendant's land into valuable waterfront property); *Sullivan, supra,* 51 *N.J.L.* at 540, 18 *A.* 689 (Special benefits "directly increase the value of the particular tract" such as "if a cut required by the railroad should drain a swamp, or a necessary embankment should maintain a mill pond."). Its highest and best use remained residential. The benefit conferred on defendants' property—added protection from damage due to storms—was the object of the dune project, was not different in kind from the benefit conferred on the island as a whole, and was only potentially different in degree from the benefit conferred on properties located further inland. Moreover, plaintiff did not present any expert testimony that a prospective buyer would be willing to pay the same price for a house with a largely-obstructed view of the ocean as for a house with a magnificent panoramic view, because the former house was safer from storm damage. *See Alden, supra,* 71 *N.J.* at 367–68, 365 *A*.2d 469; *City of Ocean City v. Maffucci,* 326 *N.J.Super.* 1, 17–19, 740 *A*.2d 630 (App.Div.), *certif.*

*denied, sub nom. City of Ocean City v. 2825 Wesley Ave. Condo.,* 162 *N.J.* 485, 744 *A.*2d 1208 (1999).

## III

■ Plaintiff also challenges two of the trial court's discretionary rulings. Plaintiff first argues that Judge Millard erred in reconsidering the earlier ruling on the issue of special benefit. We disagree. A trial judge has inherent authority to reconsider interlocutory rulings. *See Lombardi v. Masso,* 207 *N.J.* 517, 534, 25 *A.*3d 1080 (2011). In this case, the first judge's decision was incorrect, and Judge Millard appropriately reconsidered and reached a different conclusion after hearing the proposed expert testimony plaintiff planned to present at trial.[6] "General benefits may not be considered to reduce the compensation" due the defendants. *Interpace, supra,* 130 *N.J.Super.* at 331, 327 *A.*2d 225. Judge Millard properly held a *N.J.R.E.* 104 hearing to avoid the prejudice and jury confusion that would have resulted had plaintiff been permitted to introduce evidence of general benefits at trial.

■ Second, plaintiff argues that Judge Millard erred in precluding plaintiff's expert from testifying about settlements reached in other condemnation cases in other municipalities. We cannot agree, for several reasons. First, plaintiff's counsel objected to the introduction of similar evidence during the pre-trial motions and obtained Judge Millard's ruling that such settlements would be inadmissible. Plaintiff was therefore judicially estopped from taking a contrary position at the trial. *Ali v. Rutgers,* 166

---

[6] Plaintiff's reliance on *County Park Commission of Camden County v. Kimble,* 24 *N.J.Super.* 221, 226, 93 *A.*2d 647 (Ch.Div.1952), for the proposition that special benefits are an issue for the jury to decide, is misplaced. Language in that case concerning the jury determining the issue of special benefits for road improvements, sewer extensions, sidewalk construction, or the like, is inapplicable here. *Kimble* was not a condemnation case; rather, it addressed the statutory power of a county parks commission to make assessments against owners of adjacent property for road improvements.

*N.J.* 280, 287–88, 765 *A.*2d 714 (2000). Second, we agree with Judge Millard that a settlement is inadmissible to prove the underlying merits of the settled dispute. *See N.J.R.E.* 408 (a settlement "shall not be admissible to prove . . . [the] amount of the disputed claim").

■ Third, the settlements with other owners were irrelevant to the valuation of defendants' property. The fact that some other homeowners were unwilling to subject themselves to litigation in order to obtain meaningful compensation, or were altruistic enough to give up a portion of their property for the common good, does not mean that defendants were not entitled to pursue just compensation for their property. Contrary to plaintiff's argument, a party's agreement to sign over an easement under threat of condemnation does not represent a compulsion-free transaction between a willing buyer and a "willing" seller. *See Comm'r of Transp. v. Silver,* 92 *N.J.* 507, 513–14, 457 *A.*2d 463 (1983).

IV

■ Finally, we find no basis to set aside the $375,000 verdict as excessive. Whether a trial court grants or denies a new trial motion, our standard of review is the same:

The trial court's ruling on such a motion shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law.

[*R.* 2:10–1.]

In our review, we defer to the trial court with respect to "intangibles" not transmitted by the record, although we otherwise make an independent determination of whether a miscarriage of justice occurred. *Carrino v. Novotny,* 78 *N.J.* 355, 360, 396 *A.*2d 561 (1979); *Baxter v. Fairmont Food Co.,* 74 *N.J.* 588, 597–99, 379 *A.*2d 225 (1977); *Dolson v. Anastasia,* 55 *N.J.* 2, 6–8, 258 *A.*2d 706 (1969). Like the trial judge, we are bound to respect the jury's verdict unless it was so excessive as to shock the conscience or otherwise constitutes a manifest injustice. *See He v. Miller,*

207 *N.J.* 230, 249, 24 *A*.3d 251 (2011); *Baxter, supra,* 74 *N.J.* at 604, 379 *A*.2d 225.

More than a decade ago, in upholding a $100,000 condemnation judgment, we held that the loss of an ocean view, caused by dune construction on defendant's land, was compensable:

> Here, the City argues that the jury based its award on non-compensable consider-ations, namely, loss of ocean view, beach access and privacy. We disagree. If a "wide factual inquiry into all material facts and circumstances—both past and prospective—that would influence a buyer or seller interested in consummating a sale of the property" is the standard, *ocean view, beach access, use and privacy are fundamental considerations in valuing beachfront property.*
>
> [*City of Ocean City v. Maffucci, supra,* 326 *N.J.Super.* at 19, 740 *A*.2d 630 (emphasis added)].

Here, as in *Maffucci,* it was for the jury to determine the amount of the value lost. During the trial, the jury visited the property and saw firsthand the view that remained after the construction of the dune. The jury also heard starkly conflicting expert testimony concerning the loss of value. It was the jury's prerogative to evaluate the experts' testimony and determine which of them was more persuasive. *See Interpace, supra,* 130 *N.J.Super.* at 332, 327 *A*.2d 225. Unlike the defense expert, plaintiff's valuation expert never entered defendants' house or stood on their deck and therefore never observed the view they claimed the dune had diminished. We agree with Judge Millard that the jury, having visited the property and seen the impact of the dune for themselves, probably discounted the testimony of plaintiff's expert that the dune had little impact on the view and only reduced the property's value by $300.

If the jury credited the testimony of defendants' expert, they could reasonably have returned a $375,000 verdict. We find no abuse of the trial judge's discretion in declining to set the verdict aside.

Affirmed.