77 N.J. Super. 119 (1962)
185 A.2d 431
RALPH ANTONELLI AND MARIE ANTONELLI, HIS WIFE AND DANIEL AMSTER AND LUCILLE J. AMSTER, HIS WIFE, PLAINTIFFS,
v.
THE PLANNING BOARD OF THE BOROUGH OF WALDWICK, DEFENDANT.
Superior Court of New Jersey, Law Division.
Argued October 19, 1962.
Decided October 31, 1962.
*121 Mr. Daniel Amster for plaintiff.
Mr. Alfred S. Nugent, Jr. for defendant (Messrs. Orbe and Nugent, attorneys).
SCHNEIDER, J.C.C. (temporarily assigned).
Plaintiffs move for summary judgment in this suit in lieu of prerogative writs to compel the approval of a building location plan and parking site map. Under the ordinance the planning board is the "strong type" board, authorized to give final approval.
Plaintiffs are the owners of property in Waldwick on East Prospect Street at or near Franklin Avenue with part of the property fronting on Dora Avenue. Plaintiffs entered to erect a store building of 17,000 square feet. This is in a business zone and the store may be erected on said ground.

The plaintiffs seek approval of a map locating the proposed building and the parking area surrounding said store. On *122 August 9, 1962 it was submitted to the Planning Board for approval as required by the Zoning Ordinance of Waldwick. It was heard by the board on August 15, 1962. There was a public hearing and the sole question was whether curb cuts should be permitted into Dora Avenue, running from said property and along it 137.48 feet, and the matter was referred to the borough attorney for his opinion.
On September 19, 1962 the Planning Board, at its meeting, without notice to the plaintiff, held another hearing and denied the application on the following grounds.
1. The parking lot would extend about 179 feet into a residential zone but the law only permits a 150-foot extension, requiring about 12 parking spaces to be dropped to conform.
2. The egress and ingress routes are not appropriate and
3. Plans do not include outdoor lighting.
Plaintiffs contend that the action of the board is unreasonable, arbitrary and capricious.
Taking the reasons for denial in reverse, we find the zoning ordinance contains no provision about outdoor lighting except to provide that any lighting in connection with off-street parking shall be so arranged as to reflect the light away from all adjoining residence building, residence zones or streets.
There is no requirement shown that a lighting place must be set forth in order to secure approval of the map. The owner may decide to erect no lighting. It is clear that the approval of the map cannot be conditioned upon filing of a lighting plan. Whether the lighting provision is a proper one in a zoning ordinance or whether there is any necessity for filing a plan is not passed on here. Suffice it to say that the objection as to failure to file a lighting plan is not proper and should not hold up approval of the map on that score.
The hearings covered only the question of ingress and egress to and from the property to and from Dora Avenue. This property is in the residence zone and none of these residents objected to traffic coming out on this street. The right *123 to use the street includes the right to cut the curb for that purpose.
There appears to be a difference of opinion as to whether or not a municipality may prevent a property owner from using a street upon which the property fronts. In this case there is access to a street other than Dora Avenue. Dora Avenue ends at the property in question and plaintiff contends they are willing to enter upon said street either from the end of the street or the side of the street.
There is no question that a property owner has a right of ingress or egress upon streets on which the property fronts. The question here is whether such right exists on a street where there is another way to secure entrance.
From the examination of the authorities, the court has come to the conclusion that an owner has a right to ingress and egress on all streets on which his property faces. A municipality can regulate ingress and egress to one street where another exists, under the police power of the municipality, and then only in such unusual circumstances as may by definite proof be shown to require the exercise of such power.
In Lindel Realty Company v. Miller, 2 N.J. Super. 204 (Ch. Div. 1948), it was held that the right of access to and from a public highway is one of the incidents of the ownership or occupancy of land abutting thereon and it exists whether the fee title of the way is in the public as well as when it is in private ownership subject to the public easement. This case was affirmed in 4 N.J. Super. 37 (App. Div. 1949) which held that adjoining property owners have equal right to access to the highway in front of their respective properties.
In Mueller v. N.J. Highway Authority, 59 N.J. Super. 583 (App. Div. 1960), it was held that a pre-existing easement of access to and from a public highway possessed by the owner of land abutting on such highway constitutes a right of property of which he cannot be deprived without just compensation and it is immaterial that he does not own in fee the roadway subject to the easement. However, the court *124 went on to say that what constitutes reasonable access is a question of fact. The court held that regardless of whether the large tract is subdivided the owner is entitled to a direct outlet on the highway for each reasonably independent economic use unit thereof.
The factual question to be determined is whether or not in the light of zoning provisions, building code and frontage requirements, and any other relevant consideration, the lots in question could have been used as an independent economic use unit, were access thereto from the highway available but for the curbing construction placed there by the highway authorities.
In the case of Maplewood v. Tannenhaus, 64 N.J. Super. 80 (App. Div. 1960), it was held that zoning limitations on the use of private property should be clearly and expressly imposed and should not be left to inference.
In the case of Good Deal of Ivy Hill, Inc. v. Newark, 32 N.J. 263 (1960), the city put up a barrier at the end of a dead-end street. The plaintiff brought suit for an injunction. The street came to a dead end at the side line of land which was used for a supermarket. The street had never been used for ingress or egress from plaintiff's premises. The court said that ordinary abutting owners are those properties fronting on the side lines of a street. Such persons clearly cannot be denied access. The question arose as to whether the plaintiff's property abutted on the street. There is no dispute in our case that it did abut on the street. In our case the street also ends at the property. If the property did not extend around to the side of the street there would have been a question as to whether it abutted. In the Good Deal case the court permitted the erection of a barrier, but under its language the plaintiff in the instant case can claim that there is right of access.
In the case of County Park Commission, Camden County v. Kimble, 24 N.J. Super. 221 (Ch. Div. 1952), the court followed the language of the Lindel case above, holding that the right of access is an incident of ownership and permitted *125 the Park Commission to construct driveways for access to the highway.
10 McQuillin Municipal Corporations (3rd ed.), Sec. 30.64 p. 675, stated that an abutting owner, subject to municipal regulation, has the right to construct a driveway from his property to the traveled portion of the highway, provided of course, that he does not unreasonably interfere with the public use of the street.
In Newman v. Mayor of Newport, 73 R.I. 385, 57 A.2d 173 (1948), the Supreme Court held that the right of ingress and egress from a highway to one's land is not a mere privilege, it is a property right appurtenant to the land, subject to reasonable regulation in the public interest, and such a right cannot be taken away or materially inpaired even under statutory authority.
In another Rhode Island case, Elder v. Mayor of Newport, 73 R.I. 482, 57 A.2d 653 (1948), the Supreme Court permitted regulations because a proposed driveway was too near a traffic light at an intersection and would increase the traffic hazard and put a danger to pedestrians. The court, however, held that the driveway should be moved since the owner cannot be denied access from the street in question.
The subject of the power to directly regulate or prohibit abutters' access to street or highway is covered in great detail in 73 A.L.R.2d, at page 640. The annotation arises out of the case of San Antonio v. Pigeonhole Parking, 158 Tex. 318, 311 S.W.2d 218 (Tex. Sup. Ct. 1958). This decision was a split one with the majority holding there was no absolute right to construct a driveway across a public sidewalk where it would create a traffic hazard. The police power was held to outweigh ordinary property rights unless the abutting owner could show a regulation under ordinance to be arbitrary and unreasonable. The court pointed out that the general rule is that access to a public highway is an incident to ownership of land abutting thereon and this right cannot be destroyed for public purposes without adequate compensation. The court held the rule is not applied where a municipality invokes *126 its police power for the protection of health, safety and the general welfare of its citizens. Police regulation does not constitute a taking of property. The court admitted that the authorities do not agree on this subject.
The minority held that the right of ingress to and egress from a highway to one's land is not a mere privilege; it is a property right appurtenant to the land. Subject to reasonable regulation in the public interests, such a right cannot be taken away or materially impaired even under statutory authority without just compensation. It held that the majority rule was the minority rule in the United States.
To set forth all the material in the annotation would be too lengthy. The general rule of right of access is overwhelmingly the law. The major problem is the conflict with the police power. Many cases hold to the power to regulate, at least reasonably, in the public interest and without legal discrimination, the extent of abutter's private right of access. The power does not extend to complete deprivation of access. It has been recognized that deprivation of access cannot be based upon a serving of the private interests of other abutters.
It will be noted that in most cases, an ordinance has been passed which creates the regulation. Here the regulation sets forth that the exit shall be at least 20 feet distant from any adjacent property located in any residence zone. Counsel for the planning board contends this prevents this application. This is not so since the regulation is complied with in all respects. This regulation would be considered a proper one. The Ordinance also provides that the off-street parking area is subject to approval of the planning board to insure its adequacy, relation to traffic safety and protection of adjacent property.
The planning board cannot deprive this right of access merely because a few property owners object without some proper regulation and reason therefor. In this case it is not disputed that there has been some approval by the police chief. On the present state of facts, a trial of the issue or *127 rehearing before the planning board could create no greater reasonableness for this restriction.
The reason therefore given for disapproval of the map is unreasonable and improper.
This brings us to the last point that the parking lot extends more than 150 feet into a residential district in violation of the ordinance. Sec. 604 (b) states:
"For commercial and all non-residential uses in Business Districts, required parking shall be provided within 150 feet of such use as permitted."
This matter was not brought up at the hearing and counsel for the planning board contends that the rejection of the plan for this reason was solely in the discretion of the planning board without the necessity of a hearing. The plaintiffs are willing to be confined to the 150 foot area but, under the present state of facts, it is almost impossible to tell where the 150 feet begin and end.
The property in question is shown to be partly in the business area and designated by a black area on the map. Nowhere is there any setting forth of the exact distance, either on the map or anywhere else in the ordinance. Plaintiffs contend that by measuring from Franklin Turnpike all the parking lot is in the 150-foot extension area. Defendant contends measuring from Prospect St. it runs over 185 feet. They contend plaintiffs do not own the property facing on Franklin Turnpike and the measurement must be from Prospect.
The business zone on the map is irregular in width and there can be no accurate scaling of the area. Defendant contends the area is 150 feet. The ordinance provides that
"Where the district boundary lines do not coincide with lot lines * * * or where it is not designated on said map by figures or dimensions, they shall be deemed to be 150 feet back from the nearest parallel street line * * *."
The ordinance and map do not meet the test of exactness *128 required by the law. It is difficult to say if the distance is 150 feet of the existing lot line, nor is there any guide as to whether the measurement should be from one street or the other.
The affidavit of the borough engineer fixes the business district as fronting on East Prospect Street at 184.49 feet from the north side of East Prospect Street. He states that the residence zone on the map is in excess of 150 feet but does not say how much. The plaintiffs' engineer asserts that on the map of the borough engineer, the distance in excess does not include more than five feet. He finds it impossible to scale the zoning map with any such accuracy and contends it does not extend the zone more than 150 feet.
If the owner of the frantage on Franklin Turnpike had not sold to the plaintiffs part of this property he could have used the entire area covered by measuring from his frontage on Franklin. Again we do not have the specificity required of zoning ordinances.
It is true that because this is a motion for summary judgment, the court must give defendant the full belief in his contentions and if a question of fact develops to set the matter for trial. The court is convinced that a trial would produce no different result than that which is now apparent on a belief of defendant's facts.
The plaintiffs are entitled to a judgment ordering the approval of the map as submitted. An appropriate judgment may be submitted.