107 N.J. Super. 248 (1969)
258 A.2d 33
STATE OF NEW JERSEY, BY THE STATE HIGHWAY COMMISSIONER, PLAINTIFF-RESPONDENT,
v.
HERBERT J. KENDALL, ELAINE B. KENDALL, MARCREST HOMES, A CORPORATION OF NEW JERSEY, TOWNSHIP OF MARLBORO, IN THE COUNTY OF MONMOUTH, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1969.
Decided September 29, 1969.
*249 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Benjamin Weiner argued the cause for appellant (Messrs. Weiner & Schoifet, attorneys).
Mr. Philip S. Carchman, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
PER CURIAM.
This land condemnation case was tried before a jury and resulted in a verdict awarding the property owner, Marcrest Homes, $1075 for a small sliver of land taken for highway purposes (.058 of an acre) and slope rights, and further awarding $2750 for the State's alleged interference with the property owner's access rights to its remaining acreage.
The State moved for judgment n.o.v. as to the $2750 portion of the verdict; and Marcrest Homes moved for a *250 new trial, claiming the $2750 award for loss of access rights was inadequate. The trial judge granted the State's motion, having reserved decision on the State's prior motions during trial to dismiss this claim pending return of the verdict. Marcrest Homes' motion for a new trial was denied.
Marcrest Homes appeals from the judgment n.o.v., insofar as it denies a recovery for the claimed loss of access rights. It also appeals from the order denying a new trial as to the quantum of damages awarded by the jury for loss of access rights. Marcrest Homes does not appeal from the award of $1075 for the land actually taken and the slope rights.
Marcrest's property is located on Route 9 at the intersection of that State Highway and Clayton Road. The entire tract contains approximately 118 acres in both Marlboro and Manalapan Townships. At the time of the State's taking on June 16, 1966 to improve Route 9, the property was vacant, unimproved, rolling land. Prior to June 16, 1966 a one-story fruit stand had been on the property, but at the time in issue there were no buildings on the land and no building permit applications were pending.
Some 109.6 acres of the entirety of 117.26 acres were zoned by Marlboro Township for residential purposes under its zone classification R-40. We are not concerned herein with that acreage. The other 7.66 acres were in commercial zone B-3. Such zoning permits highway commercial uses. Of that latter acreage, there were 720 feet of frontage on Clayton Road with 4.43 acres; and there were 525 feet of frontage on Route 9 with acreage of approximately 3.23 acres. It is this last item with which we are concerned.
In reconstructing and improving Route 9, the State erected curbing and a guard rail along the entire 525-foot frontage on Route 9 for the safety of the travelling public  the highway level being about three feet higher than Marcrest's abutting property. Such a curbing and guard rail had not existed prior thereto, so that one could previously *251 drive off Route 9 onto the Marcrest land, as, for example, to the lone fruit stand.
The highway business district permits funeral homes, service stations, drive-in restaurants, bowling alleys, motels and other equivalent uses. There are area requirements for each use, such as 60,000 square feet for bowling alleys and lumber yards, 40,000 square feet for funeral homes, service stations, motels and other specified uses, and 20,000 square feet for animal hospitals. There are highway frontage requirements, generally 200 feet, but 300 feet for bowling alleys and down to 100 feet for drive-in-restaurants and animal hospitals.
However, Marcrest had never subdivided its lands or highway frontage, had never made application for any subdivision and, as noted above, the land was vacant and unimproved.
The State granted five curb opening permits along the 525-foot frontage including an egress permit of 45 feet in the northerly 260 front feet of the property. However, some 242 feet of frontage along Route 9 had no access. It is the lack of access at this point which gives rise to Marcrest's claim of damages. It produced an expert who calculated that this damage was $21,800. His formula was to calculate the frontage-foot value along Route 9, which he fixed at $225; he then deducted 40% therefrom as the loss (in his opinion) in value by reason of the lack of ready access, and next he multiplied the asserted loss of $90 in front-foot value by the 242 front feet allegedly interfered with. By this method, the expert arrived at the figure of $21,800 as his estimate of the damage caused.
The State's expert gave as his opinion that there was no denial of access rights and no damage by reason of the State's erection of the guard rail and curbing. To him this represented only a measure of present control in furtherance of highway safety. When queried on cross-examination as to how one could traverse the 242 feet from Route 9, in view *252 of the existing "curb and fence," he replied, "Raise the grade of the land and the fence is taken down." The State's position is that its conduct has not denied access from Route 9 to defendant's abutting lands, but merely controlled access in the interest of the public safety. It points out that not only must the difference in levels between the highway and Marcrest's lands be considered, but also, as the map indicates, the point of highway frontage in issue is at the Clayton Road intersection where highway safety requires control of access. The State expressed a willingness to consider in the future any specific application by Marcrest for any further curb-cut at the point in issue. consistent with the safety of the public using the highway. No such specific application has yet been made as to the frontage in issue.
The evidence supports the trial court's determination that, as a matter of law, Marcrest Homes was not, under the totality of the circumstances, denied access from Route 9 to its abutting lands to such an extent as would entitle it to compensation from the State. Its judgment n.o.v. as to this phase of the case was, therefore, proper. There was not in this case a denial of all access, as in Mueller v. N.J. Highway Authority, 59 N.J. Super. 583 (App. Div. 1960). Mueller points out that "the general rule is that the property owner is not entitled to access to his land at every point between it and the highway but only to `free and convenient access to his property and the improvements on it.'" (At 595) Reasonable highway regulations will not give rise to a claim for compensable taking. Tubular Service Corp. v. Comm'r State Highway Dept., 77 N.J. Super. 556 (App. Div. 1963), affirmed o.b. 40 N.J. 331 (1963).
In brief, an owner of land abutting a highway may not be shut off from all access thereto, but his right of access must be consonant with traffic conditions and reasonable and uniform police requirements. Breinig v. County of Allegheny, 332 Pa. 474, 2 A 2d 842, 847-848 (Sup. Ct. 1938). The law recognizes a "noncompensable interference with private highway access." See 73 A.L.R.2d 691.
*253 We find no substantial merit in the claim that Marcrest was prejudiced by a remark made by the State's attorney in summation. Moreover, the conclusion above makes it unnecessary to decide whether Marcrest was entitled to a new trial on the quantum of damages.
The judgment is affirmed.