269 N.J. Super. 469 (1994)
635 A.2d 1007
LIMA & SONS, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
BOROUGH OF RAMSEY, JOHN DOE, JAMES DOE, JANE DOE, AND RICHARD ROE, INDIVIDUALLY AND AS MEMBERS OF THE GOVERNING BODY OF THE BOROUGH OF RAMSEY, DEFENDANTS-RESPONDENTS, AND NEW JERSEY DEPARTMENT OF TRANSPORTATION, BELEZZA CONSTRUCTION CO., INC., AND JAMES BRENNAN, INDIVIDUALLY AND AS RAMSEY BOROUGH ATTORNEY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1993.
Decided January 5, 1994.
*471 Before Judges PRESSLER, DREIER and KLEINER.
Kurt E. Johnson argued the cause for appellant.
Matthew S. Rogers argued the cause for respondents (Contant, Scherby & Atkins, attorneys; Mr. Rogers, of counsel; Andrew T. Fede, on the joint brief).
Frank N. Yurasko argued the cause for respondents.
The opinion of the court was delivered by KLEINER, J.S.C. (temporarily assigned).
*472 Plaintiff Lima and Sons, Inc. appeals an order dismissing its complaint which sought (1) a permanent injunction to prevent its loss of access to an abutting public street, (2) compensatory and punitive damages attributed to defendant Borough of Ramsey's alleged violation of its rights under the federal and state constitutions and under 42 U.S.C.A. § 1983, and (3) alternatively an order either directing defendant Ramsey to initiate a condemnation proceeding or requiring Ramsey to construct a driveway or curb cut so as to facilitate plaintiff's access to an abutting roadway.
Lima & Sons, Inc. owns real property, which is zoned for commercial use, consisting of two adjacent lots in the Boroughs of Ramsey and Upper Saddle River, commonly known as 319 Nottingham Road. The property is located at the northwest corner of what was formerly the intersection of State Highway Route 17 and Nottingham Road in Ramsey. Lima operates a retail boat dealership on this property. Although one side of the property abuts Nottingham Road, the main frontage is on Route 17 and the building on the property faces Route 17. The neighborhood along Nottingham Road is residential.
Prior to October 1987, Nottingham Road ran through a residential area and terminated at Route 17. Vehicles travelling on Nottingham Road could use that street for access to Route 17 south, and vehicles could exit Route 17 south at the Nottingham Road exit.
At some point in time not made clear by the record, the New Jersey Department of Transportation (D.O.T.) contracted for the construction of an overpass to carry traffic on Lake Street, which is north of Nottingham Road, over Route 17 into the Borough of Ramsey. One question which arose in the design of the Lake Street project was whether to continue to allow access to Route 17 from Nottingham Road. After soliciting public input, Ramsey decided that Nottingham Road would end with a cul-de-sac before its intersection with Route 17, thereby discontinuing access from Nottingham Road to Route 17, and curbing would be constructed *473 for the first time along Nottingham Road.[1] On October 21, 1987, D.O.T. notified the Borough of Ramsey that the intersection of Nottingham Road at Route 17 would be permanently closed. Ramsey passed a resolution on March 9, 1988 supporting the closing of the intersection.
In October 1987, two sets of temporary barricades were set up which cut off access to Route 17 from Nottingham Road. The D.O.T. erected a set directly on Route 17, and Ramsey pursuant to a resolution installed a second set about 150 feet west of the D.O.T. barricade. Prior to October 1987, there was a fence with a gate along plaintiff's Nottingham Road property line. According to plaintiff, when the two sets of barricades were erected by the D.O.T. and Ramsey, their gate was situated between the barricades, thus closing off plaintiff's access to Nottingham Road. Plaintiff therefore moved the gate in its fence to the west of the Ramsey barricade and thereafter continued using the gate for access to Nottingham Road, although it could not use Nottingham Road for access to Route 17.
While the project was still in the design stage, plaintiff communicated on December 9, 1987 with the D.O.T. to request that the project design include a curb cut to allow access from its property onto Nottingham Road. The D.O.T. responded on January 5, 1988. It advised plaintiff that the D.O.T. had concluded on October 21, 1987 that the intersection of Nottingham Road at Route 17 would be permanently closed. It also advised plaintiff that it had no objection to including a curb cut as requested in the project design, but advised that it would abide by the decision of Ramsey, since the D.O.T. had no jurisdiction over Nottingham Road. Ramsey, apparently as a result of informal inquiries, *474 discussed the concept of access from plaintiff's property to Nottingham Road in executive session on April 16, 1989, and concluded it still opposed access onto Nottingham Road from plaintiff's property.
Plaintiff used the gate in its fence for access to Nottingham Road from October 1987 until November 1989, when the D.O.T. finally constructed the cul-de-sac and curbing. This curbing prevented further use of the gate. Plaintiff has been able to continue business operations by virtue of its direct access to Route 17, but it contends that the denial of access to Nottingham Road has created significant inconvenience as well as creating an economic impact on the value of its property.
After initiation of this suit, the matter was pretried, and a bifurcated non-jury trial without testimony was scheduled to consider separately the issues of liability and damages. On the day of trial, the court allowed opening statements but then considered the matter summarily. Two maps were admitted into evidence. Plaintiff argued that since Ramsey did not pass any ordinance or resolution specifically restricting plaintiff's access to Nottingham Road, Ramsey's actions preventing plaintiff access to the road were illegal and violated its civil rights. In response, Ramsey contended that Lima never had an absolute right of access to Nottingham Road and therefore there was no need for an ordinance to take away any existent access. The trial judge then concluded the proceedings allowing the parties one week to supplement their arguments. No supplements were filed.
The trial judge thereafter rendered an oral decision and dismissed plaintiff's complaint.[2] He determined that the actions taken by Ramsey were not arbitrary, capricious, or unreasonable and that Lima had suffered no compensable damages. The trial judge found as a matter of law that the denial of secondary access to a municipal roadway was a proper exercise of Ramsey's available *475 police power since plaintiff still maintained reasonable access to Route 17.
On appeal, plaintiff argues: (1) the trial court's summary disposition of the matter was an abuse of its discretion; (2) plaintiff has an absolute right of access to Nottingham Road, or alternatively, has a right to reasonable access to Nottingham Road; (3) plaintiff's access was taken without due process of law; (4) the respondent Borough of Ramsey did not vacate the closed portion of Nottingham Road; (5) plaintiff has a statutory right to move and continue using its driveway onto Nottingham Road; (6) 42 U.S.C.A. § 1983 is applicable to its claim against Ramsey.
We initially consider whether a property owner has an absolute right of access to all abutting highways or merely has a right of reasonable access to the general system of streets and highways. In support of its contention that it has an absolute right of access, plaintiff relies on Antonelli v. Planning Bd. of Waldwick, 77 N.J. Super. 119, 123, 185 A.2d 431 (Law Div. 1962), rev'd on other grounds, 79 N.J. Super. 433, 191 A.2d 788 (App.Div. 1963), where the trial court stated:
There is no question that a property owner has a right of ingress or egress upon streets on which the property fronts. The question here is whether such right exists on a street where there is another way to secure entrance.
From the examination of the authorities, the court has come to the conclusion that an owner has a right to ingress and egress on all streets on which his property faces. A municipality can regulate ingress and egress to one street where another exists, under the police power of the municipality, and then only in such unusual circumstances as may by definite proof be shown to require the exercise of such power.
However, it is generally accepted that a "property owner is not entitled to access to his land at every point between it and the highway but only to `free and convenient access to his property and the improvements on it.'" High Horizons Dev. Co. v. Dep't of Transp., 120 N.J. 40, 48, 575 A.2d 1360 (1990) (quoting Mueller v. N.J. Highway Auth., 59 N.J. Super. 583, 595, 158 A.2d 343 (App. Div. 1960)). The pronouncement in Antonelli must be read in conjunction with High Horizons Dev. Co., supra. See also Comm'r of Transp. v. Nat'l Amusements, Inc., 244 N.J. Super. 219, *476 581 A.2d 1353 (App.Div. 1990), certif. denied, 127 N.J. 327, 604 A.2d 601 (1991); State v. Charles Investment Corp., 143 N.J. Super. 541, 363 A.2d 944 (Law Div. 1976), aff'd o.b., 151 N.J. Super. 14, 376 A.2d 534 (App.Div. 1977), aff'd o.b., 76 N.J. 86, 385 A.2d 1227 (1978).
In State by Comm'r of Transp. v. Van Nortwick, 260 N.J. Super. 555, 558, 617 A.2d 284 (App.Div. 1992), we recently recited the principles of law regarding compensable injury to a landowner's right of access:
Access to a public highway is a property right and its deprivation requires just compensation. Mueller v. N.J. Highway Auth, 59 N.J. Super. 583 [158 A.2d 343] (App.Div. 1960). On the other hand, "the property owner is not entitled to access to his land at every point between it and the highway but only to `free and convenient access to his property and the improvements on it.'" Id. at 595 [158 A.2d 343]. Where, by virtue of state action, access is limited but remains reasonable, there is no such denial of access as entitles the landowner to compensation. State Highway Comm'r v. Kendall, 107 N.J. Super. 248 [258 A.2d 33] (App.Div. 1969) (limitation of access to designated openings resulting from the installation of curbing and railing along highway); State v. Stulman, 136 N.J. Super. 148 [345 A.2d 329] (App.Div. 1975) (substitution of more circuitous access roads).
Nor is a landowner entitled to compensation by virtue of inconvenience caused by the need to follow a more circuitous route. State v. Monmouth Hills, Inc., 110 N.J. Super. 449 [266 A.2d 133] (App.Div. 1970) (loss of left turn access resulting from installation of center barriers); State v. Stulman, supra (substitution of more circuitous access road); see State v. Interpace Corp., 130 N.J. Super. 322 [327 A.2d 225] (App.Div. 1974) (access made more difficult by the need to cross a newly constructed feeder lane to Interstate Route 80). [State v. Charles Investment Corporation, 143 N.J. Super. 541, 544-545, 363 A.2d 944 (Law Div. 1976), aff'd o.b., 151 N.J. Super. 14, 376 A.2d 534 (App.Div. 1977), aff'd o.b., 76 N.J. 86, 385 A.2d 1227 (1978).]
Moreover, "[a]lthough a diminution of access may cause other conditions on the property itself which may be compensable, ... as long as the remaining access is reasonable, the diminution per se is not compensable." Ibid.
Although the State Highway Access Management Act, N.J.S.A. 27:7-89 to -98, enacted in 1989, provides a statutory and regulatory framework for managing access to state highways and not local public roadways, it is noteworthy that the legislative findings and declarations of the Act, N.J.S.A. 27:7-90, provide:

*477 e. Every owner of property which abuts a public road has a right of reasonable access to the general system of streets and highways in the State, but not to a particular means of access. The right of access is subject to regulation for the purpose of protecting the public health, safety and welfare.
........
g. The access rights of an owner of property abutting a State highway must be held subordinate to the public's right and interest in a safe and efficient highway.
We therefore conclude that a property owner clearly is entitled only to reasonable access to the system of public roadways. See State by Comm'r of Transp. v. Van Nortwick, supra, 260 N.J. Super. at 558, 617 A.2d 284; State v. Charles Investment Corp., supra, 143 N.J. Super. at 544-45, 363 A.2d 944; State Highway Comm'r v. Kendall, supra, 107 N.J. Super. at 252, 258 A.2d 33; Mueller v. N.J. Highway Auth, supra, 59 N.J. Super. at 595, 158 A.2d 343; High Horizons Dev. Co. v. Dept. of Transp, supra, 120 N.J. at 48, 575 A.2d 1360. The reasonableness of a property owner's access "in turn is dependent upon the use of the property and the expected traffic flow." Comm'r of Transp. v. Nat'l Amusements, Inc., supra, 244 N.J. Super. at 225, 581 A.2d 1353.
We next consider whether the trial court's summary disposition of the matter below was a substantial abuse of its discretion. Summary judgment ordinarily is granted only upon a showing that there is no genuine issue as to any material fact. R. 4:46-2; Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 74-75, 110 A.2d 24 (1954). Although the facts below were substantially undisputed, the question of whether plaintiff retained reasonable access to the public roadways remained. Such an inquiry clearly implicates a potentially material question of fact. Mueller v. N.J. Highway Auth., supra, 59 N.J. Super. at 595, 158 A.2d 343. Our decisions recognize the distinction however, between facts and conclusions to be drawn from those facts. Tubular Serv. Corp. v. Comm'r State Highway Dep't, 77 N.J. Super. 556, 561, 187 A.2d 201 (App.Div.), aff'd o.b., 40 N.J. 331, 191 A.2d 745 (1963); Kryscnski v. Shenkin, 53 N.J. Super. 590, 597, 148 A.2d 58 (App.Div.), certif. denied, 29 N.J. 465, 149 A.2d 859 (1959).
*478 The question of whether reasonable access existed is a factual conclusion to be drawn from the surrounding undisputed facts of the case. Where there is only one reasonably justifiable conclusion to be made from the undisputed operative facts, a summary disposition is proper. State v. Interpace Corp., supra, 130 N.J. Super. at 327-28, 327 A.2d 225; Tubular Serv. Corp. v. Comm'r State Highway Dep't, supra, 77 N.J. Super. at 561, 187 A.2d 201. Given plaintiff's direct access to Route 17, the undisputed facts of this case require the conclusion that reasonable access existed. Plaintiff's argument that it must take a more circuitous route for ingress and egress to its property does not make such access unreasonable. See State v. Charles Investment Corp., 143 N.J. Super. 541, 546, 363 A.2d 944 (Law Div. 1976), aff'd o.b., 151 N.J. Super. 14, 376 A.2d 534 (App.Div. 1977), aff'd o.b., 76 N.J. 86, 385 A.2d 1227 (1978). Moreover, use of a summary disposition here was not clearly capable of producing an unjust result. R. 2:10-2. The trial court had before it all operative facts needed for a decision, and both parties were aware of the court's intention to dispose of the matter in a summary fashion. We therefore affirm the trial court's summary disposition of the matter.
Plaintiff also argues that its due process rights were violated in that it was given no opportunity by Ramsey to submit comments or proofs to assist the Borough in making its decision respecting its disallowance of a curb cut. "Although a property owner is not entitled to any particular highway access, the owner is certainly entitled to procedural fairness in pursuing discretionary access." High Horizons Dev. Co. v. Dep't of Transp., supra, 120 N.J. at 49, 575 A.2d 1360. The procedural requirements for due process necessarily vary from case to case. Id. at 53, 575 A.2d 1360 (citing Lopez v. N.J. Bell Tel. Co., 51 N.J. 362, 373, 240 A.2d 670 (1968)).
Prior to the completion of this entire project, plaintiff had applied to the Ramsey Borough Planning Board for access to Nottingham Road via a curb cut in a 1988 site plan application which included bulk variances. This application was denied. After *479 two public hearings the Ramsey Planning Board determined by resolution that permitting access to Nottingham Road would create a serious detriment to the public good and the immediate neighborhood which would far outweigh any benefit it would confer to plaintiff. Plaintiff clearly had the opportunity to be heard by the Borough. Moreover, we note that no appeal was taken from the Planning Board's decision. On these facts, we find that considerations of due process were satisfied. After two public hearings and the opportunity of securing public comment, Ramsey was not required to consider anew the question of whether a curb cut should be installed in the curbing as part of the D.O.T. project. Procedural fairness was afforded plaintiff on this issue.
We next consider plaintiff's assertion that since the Borough took no official action and did not vacate the portion of Nottingham Road between the exterior of the cul-de-sac and the edge of road, which no longer is in use, the entire project constructing the cul-de-sac is invalid and should be removed. Ramsey concedes that it failed to follow the required procedure delineated in N.J.S.A. 40:49-6 and N.J.S.A. 40:67-21 where a municipality determines to vacate a public street or portion of a street. However, it correctly submits that the failure of the Borough to vacate the property is irrelevant to the matter sub judice since such a procedure acts to extinguish public rights. Vacating a public street merely relieves the land of the public's right of easement and does not infringe upon a private right of access of an abutting landowner. Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119, 126, 123 A.2d 511 (1956); see also Mueller v. N.J. Highway Auth, supra, 59 N.J. Super. at 592-93, 158 A.2d 343. The Borough of Ramsey's failure to vacate the closed portion of Nottingham Road does not affect plaintiff's rights as a property owner.
It is apparent that the purpose underlying N.J.S.A. 40:49-6 and N.J.S.A. 40:67-21 is to provide hearing and notice requirements in order to satisfy considerations of due process. Here, no such *480 ordinance vacating a portion of Nottingham Road was passed. Nonetheless, plaintiff did have notice of the plan design to cut off access to Nottingham Road and to construct a curb, as evidenced by its request to the D.O.T. while the project was still in the design stage to have driveway access. Additionally, plaintiff had an opportunity to be heard at the Ramsey Planning Board public hearings considering its site plan application. Although the letter of the statute mandating the particular procedure for vacating a street was not followed, the policy of due process underlying it was satisfied. Moreover, Ramsey need only pass an ordinance vacating the portion of Nottingham Road in order to ratify its action. "[I]f a municipal body ... has the power to act, but has failed to follow exactly the proper procedures to exercise that power, its irregular, but not ultra vires, action may be subsequently ratified." Ferreira v. City of Asbury Park, 237 N.J. Super. 142, 162, 567 A.2d 233 (App.Div. 1989), certif. denied, 121 N.J. 627, 583 A.2d 324 (1990).
Plaintiff next contends that it has a statutory right to move its driveway accessing Nottingham Road and to continue its use of such driveway pursuant to N.J.S.A. 40:67-8 and N.J.S.A. 40:67-10. Plaintiff cites to no judicial authority, and we do not find its argument persuasive on the facts of this case. Where, as here, a property owner retains reasonable access to another abutting public road, we do not believe that these statutory sections dictate an absolute right to retain alternate access to another abutting road.
Lastly, plaintiff's claim that the actions of the respondents worked to deprive its rights under color of state law in violation of 42 U.S.C.A. § 1983 hinges on whether plaintiff actually possessed a property right. As we have already stated, a property owner has a right of reasonable access onto public roads. Here, plaintiff's direct access onto Route 17 renders its access to the system of public roadways reasonable. Plaintiff therefore was not deprived of any property right through the construction of the *481 curbing along Nottingham Road, and the trial judge properly dismissed its 42 U.S.C.A. § 1983 claim.
The dismissal of plaintiff's complaint is affirmed.
NOTES
[1] A municipality possesses the authority to pass an ordinance providing for the construction of curbing on streets within a municipality. N.J.S.A. 40:67-1. The trial court requested counsel supply the court with the relevant borough ordinance. That ordinance was not included in the record on appeal. Counsel for plaintiff has not argued that the requisite ordinance was not enacted. We therefore have not examined that issue.
[2] Plaintiff's complaint had previously been dismissed as to all other named defendants.